NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3252

WILLIE M. RAWLS, JR.,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED:  April 18, 2005

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN and PROST, Circuit Judges.

PER CURIAM.

Mr. Willie M. Rawls, Jr. appeals the decision of the Merit Systems Protection Board that found that the United States Postal Service had accorded Mr. Rawls due process of law when it suspended and removed him from employment.[1]  We <u>affirm</u>.

---

1    <u>Rawls v. United States Postal Service</u>, 94 M.S.P.R. 614 (2003); on remand, No. AT0752020706-B-1, (MSPB Jan. 27, 2004).

04-3252                              1

BACKGROUND

Mr. Rawls is a mail-handler who was arrested on July 26, 1999 and charged with attempted first-degree murder for allegedly shooting a nightclub bouncer several times with a shotgun the previous day. The agency issued notices to Mr. Rawls on August 11 and 16, 1999, notifying him of an Investigative Interview "to discuss the criminal charges." The Interview occurred on August 18, 1999, and he was placed on indefinite suspension the next day. He was informed that he could file a grievance within fourteen days.

Mr. Rawls was indicted on December 14, 1999. In March 2002 he was convicted of the lesser-included offense of reckless endangerment, and sentenced to 11 months and 29 days imprisonment. He was incarcerated from July 26, 2002 until January 14, 2003. On June 7, 2002 the agency notified Mr. Rawls of a second Investigative Interview, "to discuss [his] misconduct on July 25, 1999 and subsequent conviction." Mr. Rawls and his representative participated in the Interview on June 12, 2002, where Mr. Rawls refused to give a statement. Mr. Rawls and his union representative signed a one-page document with the subject line "Conduct unbecoming of a Postal Employee" that gave written notice to Mr. Rawls and his representative that "all evidence, including other relevant information and factors (Investigative Memorandums, Incident Reports, Attendance Records, Response to charge(s), Past Disciplinary Actions, seriousness of the Offense, Policy, Postal Regulations, etc.) would be considered prior to rendering a decision concerning the appropriate disciplinary action to be taken." The Investigative Interview was followed by a Notice of Decision two days later to remove him from service, effective June 21, 2002, based on the criminal conviction. The Notice of Decision informed Mr. Rawls that he had the right to file a grievance within fourteen days. It is unclear from the record whether Mr.

Rawls filed a grievance, but Mr. Rawls appealed to the MSPB. At the hearing before an administrative judge the agency conceded that it had not issued notices proposing the suspension or removal as required by 5 U.S.C. §7513(b). The agency argued that the error was harmless, and that no constitutional rights were violated. The AJ reversed both the suspension and the removal, on statutory and constitutional grounds, and ordered that Mr. Rawls be returned to work. Mr. Rawls was then in jail, and the agency refused to participate in a work-release program. The agency then conducted another removal procedure, with appropriate notice, resulting in removal effective December 16, 2002.

Meanwhile, the agency appealed the AJ's decision to the full Board, which reversed the AJ's holding of constitutional violation. The Board held that Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), as elaborated by Gilbert v. Homar, 520 U.S. 924 (1997), established that when the penalty is suspension, a post-suspension opportunity to respond can satisfy the employee's constitutional right to minimum due process "as the particular situation demands," referring to the imposition of felony charges. 520 U.S. at 930, 934. The full Board reversed the AJ's ruling with respect to minimum due process as applied to the 1999 suspension procedure.

The Board recognized that a termination of employment may require more rigorous process to satisfy the constitutional requirement. However, the Board held that the notice of the pre-decision Investigative Interview, when Mr. Rawls had already been convicted of a crime, gave sufficient notice of the agency's charges, and that Mr. Rawls had an opportunity to file a grievance before the effective date of the removal. The Board held that the Loudermill and Homar standards of minimum due process were met by the 2002 removal procedures, and reversed the AJ's contrary holding.

04-3252                                                   3

However, the Board also held, as the agency had conceded, that 5 U.S.C. §7513(b) was violated as to both the suspension and the removal, by the agency's failure to issue the proposal notices required by statute. The Board remanded to the AJ, to provide the opportunity for a hearing on the question of whether the error was harmful. On remand, the AJ held that Mr. Rawls had not shown that the asserted error led the agency to reach a different result than it would have reached in the absence or cure of the error. No review by the full Board was sought of that decision. Mr. Rawls here appeals only the constitutional question of due process under Loudermill and Homar as applied to the first removal, for Mr. Rawls seeks back pay for the period between the first and second removals.[2]

## DISCUSSION

Final decisions of the Merit Systems Protection Board are affirmed unless they are (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. §7703(c); Fernandez v. Dep't of the Army, 234 F.3d 553 (Fed. Cir. 2000).

Mr. Rawls argues that he was not afforded Due Process as required by the Fifth Amendment to the Constitution. Specifically, Mr. Rawls argues that he was not afforded a pre-termination opportunity to respond. Mr. Rawls maintains that the Investigative Interview was an inadequate process because he did not know that termination was a

---

2       The second removal was upheld, Rawls v. United States Postal Service, MSPB No. AT0752030304-I-1 (May 2, 2003), and is not at issue here.

possible disciplinary action at the time. He further argues that the grievance procedure was also an inadequate process because it did not offer a pre-decisional opportunity to respond.

Due process with respect to government employees was described by the Supreme Court in Loudermill, supra, which set the minimum criteria of notice and an opportunity to respond:

> The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

470 U.S. at 546 (citations omitted). Due process also requires "an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Termination requires a pre-disciplinary hearing, in contrast to suspension, which in appropriate circumstances may be effected with only a post-disciplinary hearing. Homar, 520 U.S. at 935. The purpose of the pre-termination hearing is to provide "an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. (quoting Loudermill, 470 U.S. at 545-46).

The government argues that the Investigative Interview in this case satisfies the Loudermill test because Mr. Rawls knew the charges against him and that disciplinary action would be taken.

By the time of Mr. Rawls' second Investigative Interview on June 12, 2002, the agency had already issued a suspension, his criminal conviction was recent, and he knew that he would soon be incarcerated. In the written notice of June 7, 2002, the agency

stated the charges against him, namely the misconduct of July 25, 1999 and subsequent conviction of criminal charges. The Investigative Interview gave Mr. Rawls notice that the charges would be considered in determining further disciplinary action, and provided an opportunity to rebut the charges. See Loudermill, 470 U.S. at 545-46 ("Here, the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."). At the Interview, Mr. Rawls was present and had an opportunity to respond.

In the circumstances in this case, where Mr. Rawls was given notice that the purpose of the second Investigative Interview was to "discuss your misconduct in July 25, 1999 and subsequent conviction," and the first Investigative Interview had already resulted in indefinite suspension of Mr. Rawls, the strictures of constitutional due process were satisfied. See Loudermill, 470 U.S. at 545 ("The foregoing considerations indicate that the pretermination 'hearing,' though necessary, need not be elaborate. We have pointed out that '[the] formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'") (quoting Boddie v. Connecticut, 401 U.S. 371, 378 (1971)).

We have considered all of the arguments presented by Mr. Rawls, but discern no basis for reversal of the Board's decision.

No costs.