**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ROBERT G. NIELSON,<br>    Appellant,<br><br>  v.<br><br>DEPARTMENT OF THE AIR FORCE,<br>    Agency. | DOCKET NUMBERS<br>DE-0752-13-0230-I-1<br>DE-0722-13-1987-I-1<br><br><br>DATE: February 25, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Robert G. Nielson, Clinton, Utah, pro se.

D. Cornell Evans, Esquire, Hill Air Force Base, Utah, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1   The agency has filed a petition for review of the initial decision, which reversed the agency's removal and indefinite suspension actions. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly modified by this Final Order to clarify the basis for reversal of the indefinite suspension action, we AFFIRM the initial decision.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        The appellant worked as a Liquid Fuel Rocket Engine Mechanic at the agency's Hill Air Force Base. Initial Appeal File (IAF), Tab 18 at 62. In 2010, the agency indefinitely suspended him due to the suspension of his security clearance and pending determination by the Air Force Central Adjudication Facility (AFCAF) of the reinstatement or termination of his security clearance. *Id.* at 41. In November 2012, the appellant was convicted of two charges of sexual battery, a Class A misdemeanor, and sentenced to jail for 2 years. IAF, Tab 5 at 32, 49. Later that same month, the agency directed the appellant to return to work on December 3, 2012, while the AFCAF investigation was still pending. *Id.* at 45. Although the appellant reported to work as directed, the agency informed the appellant he had not provided the necessary documentation for participation in a work release program, and did not allow him to return to work. *Id.* at 49. The appellant provided the necessary documentation that same day, and on January 3, 2013, the agency informed the appellant that it was

declining to participate in the work release program. *Id.* at 51. The agency denied the request because it determined he was not ready, willing and able to report to work when needed. *Id.* at 52. Shortly thereafter, the agency proposed the appellant's removal on a charge of unauthorized absence of more than 10 consecutive days, based on his absence commencing December 3, 2012. *Id.* at 53. The agency characterized this absence as without leave (AWOL). *Id.* After the appellant responded, the agency sustained the charge and directed the appellant's removal. *Id.* at 55-57.

¶3 The appellant initiated a Board appeal challenging his removal. IAF, Tab 1 at 1-2. During a status conference call, the agency informed the administrative judge that it had decided to cancel the appellant's removal and attempted to moot the appeal. IAF, Tab 8. The appellant informed the administrative judge approximately a week later that the agency had returned him to an indefinite suspension status. *Id.* The administrative judge docketed a second appeal challenging his indefinite suspension. She subsequently issued an order directing the agency to submit evidence and argument regarding the basis for taking both adverse actions. IAF, Tab 14. The administrative judge joined the appeals and issued an initial decision that reversed both the agency's removal and indefinite suspension actions. IAF, Tab 19, Initial Decision (ID) at 1, 9-10. The administrative judge found that the agency had not proven that its rescission of the removal had rendered the appeal moot. ID at 7-8. Because the appeal was not moot, the administrative judge adjudicated the removal appeal and found the agency failed to prove its AWOL charge. ID at 8-9. She found that the agency's decision not to participate in the appellant's work release program on the grounds that he was not ready, willing, and able to report to work was arbitrary and capricious. ID at 8-9. Therefore, the agency did not prove the appellant was properly considered AWOL. ID at 8-9. Finally, the administrative judge found the agency violated the appellant's constitutional due process rights when it placed the appellant on an indefinite suspension as of May 8, 2013. ID at 9-10.

¶4    The agency has filed a timely petition for review. Petition for Review (PFR) File, Tab 1. The appellant has filed a response. PFR File, Tab 4.

The administrative judge properly found the agency did not moot the removal appeal.

¶5    The agency argues on review that it submitted sufficient evidence to demonstrate that it rendered the appellant's removal moot. The administrative judge found the agency had not rendered the removal moot because it had not provided evidence that it had paid all back pay and benefits to which the appellant was entitled as of the effective date of his removal. ID at 7-8. We agree.

¶6    The Board's jurisdiction is determined by the nature of the action at the time the appellant filed his appeal. *Rosato v. Department of the Army*, 111 M.S.P.R. 95, ¶ 4 (2009). An agency's unilateral modification of its adverse action after an appeal is filed cannot divest the Board of jurisdiction unless the appellant consents to such divestiture or the agency completely rescinds the action being appealed. *Id.* Thus, the Board may only dismiss an appeal as moot if the appealable action is canceled or rescinded by the agency. *Id.* However, for the appeal to be deemed moot, the employee must have received all of the relief that he could have received if the matter had been adjudicated and he had prevailed. *Id.* An agency does not cancel an action when it reinstates an employee on paper but does not return him to duty. *See Rauccio v. U.S. Postal Service*, 44 M.S.P.R. 243, 245 (1990) (finding that placement on administrative leave pending a second removal was insufficient to moot out the first removal action).

¶7    The agency argues that it was not required to pay back pay or benefits in order to cancel the appellant's removal because, by returning him to his 2010 indefinite suspension, it returned him to his status at the time of his removal. PFR File, Tab 1 at 5-9, Tab 2 at 5. The agency points to a May 8, 2013 letter it issued to the appellant after advising him that his removal was canceled, in which

it stated that the November 2012 letter instructing him to report to duty on December 3, 2012 was "prepared and sent . . . in error," and was "cancelled," and an accompanying Form 50 canceling the appellant's "Return to Duty." PFR File, Tab 1 at 8, Tab 2 at 5; IAF, Tab 18 at 63-64. However, we find that the agency ended the appellant's indefinite suspension when it ordered the appellant to return to work effective December 3, 2012. IAF, Tab 5 at 23. Although the agency attempted to retroactively "cancel" the order to return to work, we find under the circumstances presented here that it could not cancel this order. *Cf. Dias v. Department of Veterans Affairs*, 102 M.S.P.R. 53, ¶ 14 (2006) (except in extreme circumstances, an employee must comply with a lawful order and grieve its propriety later). In order to moot out the appellant's removal appeal, the agency was required to pay the appellant back pay and benefits for the period beginning from the date the agency ordered him to return to work to the date of his reinstatement. Because the agency has presented no evidence that it provided the appellant with the appropriate back pay and benefits for this period of time,[2] it has not shown that it provided the appellant with all the relief he would have received to moot the appeal.[3] Therefore, the administrative judge properly adjudicated the merits of the appellant's removal appeal.

---

[2] The agency submitted a leave and earnings statement that reflected payment of nearly $6,000 labeled as retroactive earnings and TSP contributions. IAF, Tab 18 at 65. But it has provided no documentation to substantiate that this pay was back pay for the period owed; it stated only that it was "retroactive return of the pay and benefits he was due." *Id*. at 6.

[3] The administrative judge found the agency did not show that it properly processed the appellant's Thrift Savings Account contributions as part of her finding that the agency did not moot the appeal. ID at 7. We need not reach this issue because we find the agency provided no evidence that it had provided back pay it owed the appellant due to canceling his removal.

<u>The agency failed to prove the charge of unauthorized absence of more than 10 days by preponderant evidence.</u>

¶8        The agency argues that the administrative judge erred in finding that the agency arbitrarily and capriciously declined to participate in the appellant's work release program.  PFR File, Tab 1 at 9-10.  The agency claims that the appellant "unexpectedly showed up at his workplace" after being instructed on how to submit an application for work release, and the agency states the record supports its argument.  *Id.*  We disagree.

¶9        First, the agency directed the appellant to report on December 3, 2012, thus the appellant's presence can hardly be described as unexpected.  IAF, Tab 18 at 45.  Second, the record evidence does not support the agency's argument that it provided the appellant with specific directions regarding the work release process as there is no evidence in the record that the agency provided any application for work release.  The agency submitted a transmittal form from an employee relations specialist with a second page that directed the appellant to sign and fax back to the employee relations specialist.  *Id.* at 47-48.  The agency also included the fax transmission report that showed two pages were successfully sent, not three pages as the agency now alleges.  *Id.* at 50; PFR File, Tab 1 at 10.  The first evidence in the record of the appellant being informed of procedures for participation in work release is the memorandum issued on December 3, 2012, when the appellant reported to work.  IAF, Tab 18 at 49.  The appellant immediately complied with the notification requirements that same day.  *Id.* at 51. The agency then waited a month to decline to participate in work release based on the determination the appellant was not ready, willing, and able to report for work when needed, with no explanation as to how the agency reached that conclusion. *Id.* at 51-52.

¶10        The Board has previously found that an agency is not obligated by law, rule, or regulation to accept an appellant for duty under a work release program. *Winslow v. Department of the Navy*, 46 M.S.P.R. 246, 251 (1990), *aff'd*, 935 F.2d

280 (Fed. Cir. 1991) (Table), *overruled in part, on other grounds, by Abbott v. U.S. Postal Service*, 121 M.S.P.R. 294 (2014). However, if the agency does consider an appellant for duty under a work release program, it must not abuse its discretion in making its determination. *Abrams v. Department of the Navy*, 22 M.S.P.R. 480, 487 (1984), *aff'd* 770 F.2d 181 (Fed. Cir. 1985) (Table). The agency provided no explanation as to how the deciding official reached his conclusion that the appellant was not ready, willing, and able to report for work. This determination appears to be contrary to the undisputed fact that the appellant reported to work on December 3, 2012, as directed by the agency. IAF, Tab 18 at 5. Therefore, we agree with the administrative judge that the agency's decision was arbitrary and capricious and an abuse of its discretion. *Id*. at 51-52; ID at 8-9; *see Abrams*, 22 M.S.P.R. at 487 (agency did not abuse its discretion when it denied participation in work release due to appellant's disciplinary record for attendance problems and agency's demonstrated need for a reliable and dependable worker). Because the agency abused its discretion in denying the appellant's request for work release, the agency has not proven by preponderant evidence that the appellant's absence was unauthorized.

The agency violated the appellant's due process rights when it implemented the May 8, 2013 indefinite suspension.

¶11      The agency argues on review that the administrative judge erred when she found the agency was required to give the appellant notice and an opportunity to respond to the May 8, 2013 notice of indefinite suspension. PFR File, Tab 1 at 10-11. The agency asserts that it was returning the appellant to the indefinite suspension that commenced in 2010, and therefore notice and opportunity to respond was unnecessary because the agency provided the appellant with those rights in 2010. *Id.* The administrative judge found that the agency denied the appellant's constitutional due process rights because it did not comply with the provisions of 5 U.S.C. § 7513(b). We modify the initial decision, still finding a constitutional due process violation.

¶12     As we found above, when the agency directed the appellant to report to work, it ended his indefinite suspension that commenced in 2010. IAF, Tab 18 at 45-46. The agency then proceeded to remove the appellant from the federal service, and although it attempted to rescind the removal and moot the appellant's Board appeal challenging the removal, it failed to successfully do so. IAF, Tab 8, Tab 18 at 57. Both of these personnel actions—the return to work and the removal—clearly demonstrate that the appellant's indefinite suspension had been cancelled by the agency even though the AFCAF investigation was still ongoing. IAF, Tab 18 at 45.

¶13     When an agency indefinitely suspends an employee pending a security clearance determination, constitutional due process does not require that the agency notify the employee of the specific reasons for the suspension of his security clearance. *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 25 (2014). Such notice is required under 5 U.S.C. § 7513.[4] *Id.* However, minimal due process does require that the agency inform the employee that his position required a security clearance and that he could no longer hold his position once he lost his clearance, and that the appellant have the opportunity to invoke the discretion of a deciding official with authority to change the outcome to the extent that viable alternatives to an indefinite suspension may have been feasible. *Id.*, ¶¶ 25, 28. Where an agency denies the employee minimum due process, then the action must be reversed due to the constitutional violation. *Rawls v. U.S. Postal Service*, 94 M.S.P.R. 614, ¶¶ 12 (2003), *aff'd*, 129 F. App'x 628 (Fed. Cir. 2005).

¶14     Here, the agency notified the appellant on May 8, 2013 that he was being immediately placed on an indefinite suspension. IAF, Tab 18 at 63. The

---

[4] The administrative judge erroneously identified the failure to follow the procedural protections in 5 U.S.C. § 7513 as violating the appellant's constitutional due process rights. ID at 9-10. We modify the initial decision to distinguish between the statutory procedural protections and constitutional due process, still finding a constitutional due process violation.

administrative judge found the agency failed to provide the appellant with the mandatory due process requirements and ordered the suspension to be reversed. ID at 9-10. The agency denied the appellant due process when he was not provided with the opportunity to invoke the discretion of a deciding official. Therefore, we agree with the administrative judge that the agency denied the appellant his due process rights when it immediately placed him on indefinite suspension on May 8, 2013.

## ORDER

¶15    We ORDER the agency to cancel the removal action dated February 25, 2013. We also ORDER the agency to cancel the indefinite suspension action dated May 8, 2013. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶16    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶17    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶18    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement

with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD: _____

William D. Spencer
Clerk of the Board

Washington, D.C.



| | DFAS CHECKLIST |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.