NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3009

SANDRA D. ROBINSON,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

---

DECIDED: April 7, 2005

---

Before SCHALL, GAJARSA, and PROST, Circuit Judges.

PER CURIAM.

## DECISION

Sandra D. Robinson petitions for review of the final decision of the Merit Systems Protection Board ("Board") that sustained the action of the Department of the Treasury ("agency") removing her from her position as a Contact Representative GS-0962-8 in the Internal Revenue Service's downtown Houston, Texas office. Robinson v. Dep't of the Treasury, No. DA-0752-03-0305-I-1 (M.S.P.B. Aug. 4, 2004) ("Final Decision"). We affirm.

DISCUSSION

I.

The agency removed Ms. Robinson from her position based upon a charge of being absent without official leave ("AWOL") from February 18, 2002, to June 10, 2002. Following a hearing, the administrative judge ("AJ") to whom the appeal was assigned issued an initial decision sustaining the removal. Robinson v. Dep't of the Treasury, No. DA-0752-03-0305-I-1 (M.S.P.B. July 14, 2003) ("Initial Decision"). The Initial Decision became the final decision of the Board on August 4, 2004, after the Board denied Ms. Robinson's petition for review for failure to meet the criteria set forth in 5 C.F.R. § 1201.115(d). This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

II.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c); Kewley v. Dep't of Health & Human Servs., 153 F.3d 1357, 1361 (Fed. Cir. 1998).

Ms. Robinson's first argument on appeal is that the agency failed to comply with Section 3(c)(2) of Article 34 of the labor agreement between the National Treasury Employees Union and the agency. Section 3(c)(2) provides as follows:

> If reasonable grounds continue to exist for questioning an employee's use of sick leave, the Employer may request that the employee provide a doctor's certificate from the employee's physician. This certification will indicate that the

employee is under the care of physician [sic], is incapacitated for duty, and the expected duration of such incapacitation. If specific medical information such as diagnosis and prognosis is requested as part of such explanation, the employee may choose to provide this information to the Employer representatives who are medically certified.

The Board found that, with respect to the period for which she was found to be AWOL, Ms. Robinson informed her supervisor that she would only provide medical documentation to qualified medical personnel. In response, the supervisor told Ms. Robinson to obtain the documentation and submit it to the union's medical doctor, so that he could provide the appropriate documentation to support a change of AWOL to Leave Without Pay ("LWOP"). The Board found that Ms. Robinson failed to provide the union's medical doctor with the required medical documentation. On appeal, Ms. Robinson has failed to make any effort to show that she provided the agency with the appropriate medical documentation. We see no error in the Board's ruling.

Ms. Robinson's second argument on appeal is that the agency committed harmful error by violating a provision in its Time and Attendance Handbook relating to LWOP. The provision states that employees do not have the right to be granted LWOP. However, it carves out an exception to that rule for employees who are receiving benefits under the program administered by the Department of Labor's Office of Workers' Compensation Programs ("OWCP"). The record reflects that Ms. Robinson was receiving OWCP benefits in the amount of twenty hours per week, and that she was approved by OWCP to work twenty hours per week.

The agency's removal action was based on Ms. Robinson's failure to report to work for the twenty hours per week that she was scheduled to work during the period February 18, 2002 through June 7, 2002. Ms. Robinson's claim of harmful error appears to be that the agency charged her with being AWOL for a period of time when she was entitled to LWOP because of the condition she had that was covered by OWCP benefits. The record shows that Ms. Robinson filed a "reoccurrence" claim with OWCP in December of 2001. The claim listed the date and time of the "reoccurrence" as November 30, 2001. OWCP denied the claim on February 15, 2002, because Ms. Robinson failed to submit evidence sufficient to support the claim. The Board rejected Ms. Robinson's harmful error claim arising from the December 2001 "reoccurrence" claim.[1] It did so on two grounds: (1) because the claim bore no connection to the period for which Ms. Robinson was charged with being AWOL (February 18, 2002 – June 7, 2002) and (ii) because the Time and Attendance Handbook provision relating to LWOP upon which Ms. Robinson relies states that "nothing in these regulations relieves the employee of the responsibility for properly requesting leave and documenting absences." The Board's decision is supported by substantial evidence. In addition, Ms. Robinson has failed to establish error in the Board's determination that the agency did not engage in harmful error.

For the foregoing reasons, the final decision of the Board sustaining Ms. Robinson's removal is affirmed.

No costs.

---

[1] Our best understanding is that Ms. Robinson's contention is that the condition giving rise to her December 2001 claim to OWCP carried over to the period for which she was deemed to be AWOL.